IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JEVANTAE T. JESTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-016 |
| | ) | |
| DR. AYODELE AYEDUN; ANTOINE CALDWELL, Warden; and BRIAN CHAMBERS, Warden, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, detained at Johnson State Prison ("JSP") in Wrightsville, Georgia, filed this case pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.    SCREENING THE COMPLAINT**

    **A.    BACKGROUND**

Plaintiff names the following Defendants: (1) Dr. Ayodele Ayedun, (2) Warden Antoine Caldwell, and (3) Warden Brian Chambers. (Doc. no. 1, pp. 1-3.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Plaintiff has a torn muscle in his back that causes muscle spasms. (Id.) For treatment, he is seen by JSP medical staff monthly and is prescribed Baclofen. (Id. at 14-15.) Plaintiff also

suffers from the residual effects of a complicated heart issue, experiencing murmurs, flutters, and palpitations several times a month. (Id. at 17.) By January 2020, however, he began experiencing chest pains and breathing issues two to three times per week, sometimes resulting in black outs and falls. (Id.)

In January 2020, Plaintiff began submitting healthcare requests forms to JSP for his heart issue. (Id. at 18.) Dr. Claxton saw him and instructed Plaintiff to submit another healthcare request form to be seen again. (Id.) Over time, Plaintiff asked for various treatments and tests on the advice of his mother, who is a nurse, and medical personnel saw him again on February 5, 2020, conducting lab work and instructing Plaintiff to request additional blood work at his next appointment. (Id. at 17-19.)

On February 19, 2020, Plaintiff saw Defendant Dr. Ayedun for his next appointment. (Id. at 19.) Plaintiff first asked for a refill of Baclofen for his back spasms. (Id. at 15.) Dr. Ayedun challenged Plaintiff by asking whether Plaintiff knew what Baclofen is. (Id. at 16.) Plaintiff explained he suffers from muscle spasms, and he had been told he had to see a medical provider each time he wanted a Baclofen refill. (Id.) Dr. Aydeun responded, "Baclofen is for people with muscle spasms!  I'm not giving you any of that . . . . I'm not refilling anything for you!  You don't need any of that! What else can I help you with?" (Id. at 16.) Plaintiff then asked Dr. Ayedun about his heart condition and potential blood work, to which Dr. Ayedun responded, "I'm not going to do any of that for you! You're not getting anything from me! You don't need any of that!" (Id. at 19.) At that moment, a nurse named Ms. Darsey walked into the room to deliver medical records and was "stunned by [Dr. Ayedun's] character." (Id. at 19-20.) Dr. Ayedun further said, "I'm not going to help you because you worry! You're not getting anything from me . . . . For all you know, we've already done all that! Didn't you just get blood work done with chronic care?" (Id.) Plaintiff states Dr. Ayedun was referencing the February 5th lab work. (Id. at 20.) Dr.

2

Ayedun then looked at Plaintiff's medical records and said, "For all you know, we've just did a creatine kinase and your kidneys are fine! You have perfect kidney level!" (Id.) When Plaintiff asked for the medical records to show his mother, Dr. Ayedun refused. (Id.) Plaintiff asked to be rescheduled to another medical provider, then left. (Id. at 21.)

On February 23, 2020, Plaintiff saw Dr. Susan Oliver and explained his back spasms, heart issue, and experience with Dr. Ayedun a few days prior. (Id. at 21-22.) Dr. Oliver told Plaintiff to ask a mental health counselor about a receiving a consult and further blood work, which Plaintiff did on March 20, 2020 (Id.) However, the counselor scolded Plaintiff for sharing his name with Dr. Oliver and said he neither knew who she was nor had spoken with her about the consult. (Id. at 23.) The counselor stated Plaintiff only suffers from anxiety. (Id.) By this point, Plaintiff's medical issues had worsened, and Plaintiff experienced symptoms four to five times a day, five days each week, including blackouts and falls. (Id. at 23-24.)

At some point in April, Plaintiff had more lab work done. (See id. at 27-28.) On May 13, 2020, Plaintiff was unknowingly scheduled for an appointment with Dr. Ayedun, but asked to be seen by another doctor because of how Dr. Ayedun treated him during the first appointment. (Id. at 27.) Ms. Darsey told Plaintiff he had to see Dr. Ayedun and hypothesized that Dr. Ayedun only treated Plaintiff poorly at the last appointment due to frustration with other patients. (Id. at 28.) Plaintiff then went to the appointment. (Id.)

Dr. Ayedun said he did not know why Plaintiff had an appointment, and Plaintiff said it likely was to go over his recent lab work. (Id. at 28.) Dr. Ayedun did so and diagnosed Plaintiff with hyperthyroidism, prescribed him Methimazole, ordered more lab work, and hinted at a future surgery. (Id. at 28-29.) Dr. Ayedun explained that Plaintiff's hyperthyroidism is likely the cause of his many heart issues, and Plaintiff thanked Dr. Ayedun and left the appointment. (Id.)

Throughout January to April 2020, Plaintiff filed grievances against Dr. Ayedun and wrote two letters to Defendant Caldwell regarding Dr. Ayedun's conduct and Plaintiff's ongoing medical issues. (Id. at 5, 35.) Plaintiff seeks a declaratory judgment, an injunction, damages, and attorney's fees. (Id. at 36.)

**B.    DISCUSSION**

**1.    Legal Standard for Screening**

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff Fails to State a Valid Claim for Deliberate Indifference to Serous Medical Need

To state a claim for deliberate indifference to a serious medical need, Plaintiff must allege: (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010).

To satisfy the objective component, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994)). To satisfy the subjective component, Plaintiff must allege that a defendant (1) was subjectively aware of a serious risk of harm and (2) disregarded that risk (3) by following a course of action which constituted more than mere negligence. Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).

5

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505.

Moreover, the Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment does not support a claim of deliberate indifference. Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010). Furthermore, the Court should not second-guess medical judgments. Wallace v. Sheriff, 518 F. App'x 621, 622-23 (11th Cir. 2013); Smith, 375 F. App'x at 910 ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment.").

Here, Plaintiff has not alleged deliberate indifference to a serious medical need. He has not been denied medical care. Plaintiff states he has been seen by multiple medical professionals and has nearly always received the medical care and attention he seeks. Plaintiff's claims revolve around one specific appointment with Dr. Ayedun, where Dr. Ayedun rudely denied Plaintiff's requests for additional bloodwork and a Baclofen refill because Dr. Ayedun did not believe Plaintiff required either. Plaintiff makes no complaints regarding his second appointment with Dr. Ayedun two months later where Dr. Ayedun treated him politely and provided a diagnosis and prescription.

This is a case of a mere difference of opinion between a doctor and a prisoner as to the proper course of treatment, and when an inmate's health complaints have received significant medical attention, the Court should not second guess medical judgments. Wallace v. Sheriff, 518 F. App'x 621, 622-23 (11th Cir. 2013); Smith, 375 F. App'x at 910 ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment."). As explained, Plaintiff eventually received the blood work requested, and Dr. Ayedun used that blood work to treat Plaintiff's heart issues. Whether Dr. Ayedun behaved poorly throughout that process does not implicate the Eighth Amendment.

Even if Dr. Ayedun was incorrect to deny the requests for blood work and Baclofen, Plaintiff has not alleged more than negligence for that treatment decision, and mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell, 169 F.3d at 1363-72. As explained by the Eleventh Circuit, the Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good."

7

Harris, 941 F.2d at 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)).  Therefore, Plaintiff fails to state a claim upon which relief may be granted against Defendant Dr. Ayedun.

### 3. Plaintiff Fails to State a Claim for Supervisory Liability Against Defendants Caldwell and Chambers

Plaintiff's complaint fails to state a claim against Defendants Caldwell and Chambers because he is attempting to hold them liable merely in light of their supervisory positions.  "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."  Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013).  Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*.  See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted).  Therefore, to hold defendants liable, Plaintiff must demonstrate that either (1) they actually participated in the alleged constitutional violation, or (2) there is a causal connection between their actions and the alleged constitutional violation.  See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

Plaintiff states he only included Defendant Chambers in this lawsuit for the purposes of enforcing a proposed injunction, as he is the current warden of JSP  (Id. at 4.)  Regarding

Defendant Caldwell, Plaintiff only mentions him the body of the complaint to note Plaintiff filed grievances and wrote two complaints to Defendant Caldwell concerning his medical treatment at JSP. (Doc. no. 1, pp. 5, 30.) Therefore, Plaintiff does not allege these defendants were present for, or participated in, an alleged constitutional violation, so Plaintiff must allege a causal connection between these defendants and the asserted constitutional violations in order to hold them liable. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation).

The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff fails to allege facts sufficient to support the necessary causal connection. Plaintiff fails to clearly allege Defendants Caldwell and Chambers made any decision regarding Plaintiff. It appears Defendant Chambers was not even warden during the events in question.

9

Plaintiff also has not alleged (1) a history of widespread abuse regarding improper medical treatment at the JSP, (2) an improper custom or policy put in place by Defendants Caldwell or Chambers regarding medical treatment, or (3) an inference that Defendants Caldwell and Chambers directed prison employees to act, or knew they would act, unlawfully. At best, Plaintiff has alleged he used the grievance procedure and provided after-the-fact-notification to just Defendant Caldwell, and his grievance and complaints were either denied or not investigated to his satisfaction. Mere knowledge of a claim after it occurs, and the mere denial of a grievance concerning that claim, cannot form the basis of a valid claim. See Asad v. Crosby, 158 F. App'x 166, 170-72 (11th Cir. 2005) (*per curiam*) (affirming district court's dismissal of supervisory liability claims against two defendants who failed, *inter alia*, "to afford [plaintiff] relief during the grievance process," because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"); see also Blackerby v. McNeil, No. CV 307-071, 2008 WL 2047814, at *1-2 (S.D. Ga. May 13, 2008) (dismissing claim against prison official who allegedly failed to act in accordance with the plaintiff's wishes concerning information in a grievance and a letter); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory officials who denied administrative grievances and otherwise failed to act based on allegations contained in the grievances), *cert. denied*, 530 U.S. 1264 (2000); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

In sum, Plaintiff has not shown Defendants Caldwell or Chambers actually participated in the alleged constitutional violation; nor has he drawn the necessary causal connection to any alleged constitutional violation. Therefore, Plaintiff fails to state a claim upon which relief can be granted against them, and Defendants Caldwell and Chambers should be dismissed from this case.

### 4. Defendants Cannot be Held Liable for Monetary Damages in an Official Capacity

Plaintiff states he is suing Defendants in their official capacities. (Doc. no. 1, pp. 2-3.) However, the Eleventh Amendment bars official capacity claims against state prison officials for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, any official capacity claims against any Defendant for monetary relief fail as a matter of law and should be dismissed.

## II. CONCLUSION

For the reasons set forth above, Plaintiff fails to state a claim upon which relief can be granted against any Defendant. Therefore, the Court **REPORTS** and **RECOMMENDS** Plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief may be granted and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 27th day of June, 2022, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA